[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for dissolution of marriage in which the parties are in dispute concerning numerous property issues. The parties were mated on June 27, 1987 in New Haven, Connecticut and have one minor child, Cara Guglielmino, who was born on October 31, 1989 and is twelve years old.
The court heard the testimony of the parties and other witnesses and reviewed the documentary evidence presented. The court evaluated the credibility and demeanor of the witnesses and considered the parties' claims for relief
The wife is fifty years old. She has a bachelors and a masters degree in nursing and has been employed as a nurse in Hamden for six years. She has two chronic medical conditions which do not presently impair her ability to work or perform life's other functions. The husband is sixty two years old and has a limited education but exceptional skills in woodworking. He retired from the Hamden Police Department on a disability pension prior to the marriage because of back injuries he suffered. He has had several surgeries, and has a 45% disability rating. His work history since then is spotty. He worked for two years as a vocational instructor at the Cheshire Correctional Center but was disabled in 1997. He is trying to regain that position with the assistance of an attorney and of his physicians, who have released him for that kind of work. Other than that, he has not worked steadily since 1997. In October, 2000, he had a total knee replacement and suffered a broken kneecap during physical therapy. However, despite his disability, throughout the marriage and until his knee surgery, he was able to do home improvement work. It is not clear how often he worked or what he earned, but his earnings were not always available to the household. In addition, despite the husband's disability, he has been able to operate a power boat and a kayak on Long Island Sound.
Apart from issues of personal property, the principal disputes between the parties concern the marital home and the wife's transfer to her father of her interest in a summer cottage on the Thimble Islands. The husband owned the house with his partner prior to the marriage. The parties bought the partner's interest after having obtained an appraisal, and became joint tenants. The husband put considerable effort in to CT Page 7108 improving the house, and kept track of his contribution although he did not keep similar accountings of the income from his other home improvement work. Both parties desire to retain the house, the wife because it provides stability and security for the child and the husband in part because it provides space for his tools, truck, and other items.
The wife had received a three-eighths interest in the island property as a gift from her father, whose family has owned the cottage for more than a century. The gift was equal to one he had made to her sister and was made for estate planning purposes. After consulting an attorney regarding the dissolution but before filing the action, the wife transferred her interest in the property back to her father. Her assertion that the transfer was made to avoid a potential federal tax lien arising out of the husband's unreported business income was not credible. The husband brought a third party complaint against the wife and her father alleging, inter alia, fraudulent conveyance, negligent infliction of emotional distress, and intentional infliction of emotional distress. The court entered judgment in favor of the wife and her father on the counts of negligent and intentional infliction of emotional distress at the close of evidence, the husband having failed to maintain his burden of proving the essential elements of those claims. The husband does not seek to have any interest in that property conveyed to him, but rather that its value be taken into account in distributing marital assets.
A party who seeks to set aside a conveyance as fraudulent has the burden of proving, by clear and convincing evidence, that the conveyance was made without substantial consideration, leaving the transferor unable to meet his obligations, or that the conveyance was made with fraudulent intent Tessitore v. Tessitore, 31 Conn. App. 40, 42 (1993). In this case, the conveyance was made without substantial consideration, but it did not leave the transferor without assets to meet her obligations and was not made with a fraudulent intent in which the grantee participated. The conclusion that the transfer did not leave the wife without assets to meet her obligations is buttressed by two further findings. First, the husband did not offer evidence of the value of the property, and the court is without a foundation to determine that value.[1] Secondly, the wife's obligations to transfer all or part of her property to the husband was not quantifiable at the time of the transfer. That obligation is governed by Connecticut General Statutes, Section 46b-81. The statute permits the court broad discretion in determining the distribution of property. The value of the marital home alone is $190,000.00, with equity of $83,000.00.
The parties have stipulated to certain orders concerning custody and visitation, but have left unresolved issues of parental decision making CT Page 7109 and access. With regard to decision making, the court accepts the husband's assertion that the parties are unable to communicate effectively concerning the child.
The court has considered the statutory criteria set forth in Sections46b-62, 46b-81, 46b-82, and 46b-84 of the General Statutes and the best interests of the child. Based upon its findings of fact and those criteria, the following orders will enter.
1. The marriage of the parties has irretrievably broken down, and it is dissolved.
2. The parties will have joint legal custody of the minor child. The child shall reside primarily with the wife. The husband shall have reasonable and flexible visitation. The visitation will include every other weekend from after school on Friday until 6:00 p.m. on Sunday; one weekday from after school until 8:00 p.m., on alternating holidays, and at least three weeks during the summer, two of which shall be consecutive. The parties will have an affirmative obligation to consult with each other before any major decision is made concerning the child. The wife will have the authority to make all decisions concerning the child's education, extra-curricular activities, medical care, and dental care if the parties are unable to agree concerning such issues, but whichever party is supervising the child at any time will have the authority to make medical decisions regarding urgent or emergency medical care at that time, and shall immediately notify the other of the condition requiring such care and the care being administered. Both parties will be responsible for the child's extra-curricular and social activities during the time of their supervision.
3. Neither party shall pay alimony to the other.
4. The husband shall within ten days quit-claim his interest in the marital home in Cheshire to the wife. The wife shall within thirty days pay him $41,500 for his share of the equity.[2]
5. The wife shall keep the first $50,000.00 from the parties' joint State Street Bank and Trust/Fidelity Account, and shall transfer the balance to the husband. She shall keep her Oppenheimer account, her TIAA/CREF account, and her Traveler's Account.
6. The husband shall within ten days transfer his interest in the dock on Money Island to the wife by an instrument substantially in accordance with the one by which he received his interest.
7. The husband shall have the Sea Ox boat and all the electronic CT Page 7110 equipment in it. He shall hold the wife harmless for all expenses associated with the boat both prior to and subsequent to the entry of judgment. The boat was ordered sold by a stipulated order on April 19, 2001, and the proceeds were to be applied to the unpaid tax obligations of the parties. The husband shall be liable for any unpaid federal or state income taxes for 1994 and 1996 and any unpaid state and federal tax obligations which may be or become due on account of his personal or business earnings from the date of the marriage to the date of the judgment, including any interest or penalties, and shall hold the wife harmless and indemnify her on the same. The indemnification shall require the husband to pay the wife's reasonable attorney's fees, if any, incurred with respect to any tax issues set forth herein.
8. The wife shall keep her Volvo automobile. The husband shall keep his Buick automobile and his truck.
9. Each party shall maintain $150,000.00 in life insurance, naming the minor child as irrevocable beneficiary, for so long as an obligation to pay child support exists. The parties shall each be entitled to ownership of their own life insurance policies unrestricted except as set forth in this paragraph.
9. The husband shall pay his own attorney fees and shall pay $5,000.00 toward the wife's. This sum shall be deducted from the sum the wife pays him for equity from the house.
10. The husband shall keep the Naugatuck Savings Bank accounts, Fidelity Destiny account,[3] Aetna annuity, and Secured Investment accounts shown on his financial affidavit dated April 21, 2002. He shall keep any proceeds he receives from worker's compensation payments for settlement of any claims arising out of any work injury he suffered during or prior to the marriage, but any payments of temporary total benefits may be used to calculate child support obligations. He shall keep any proceeds he receives from any claim for wrongful discharge or otherwise from the State of Connecticut arising out of his employment in the Corrections Department, but any salary or pension benefits he receives may be used to calculate child support.
11. The husband shall pay child support in the amount of $114.00 per week, consistent with the Child Support Guidelines based upon his actual income. He shall pay 40% of any unreimbursed medical bills for the minor child after the first $100.00. His obligation to pay child support shall continue until the later of the date the child reaches the age of eighteen or graduates from high school, but not beyond her nineteenth birthday. CT Page 7111
12. The husband shall report to the wife any change in the income reflected on his financial affidavit including, without limitation, any salary he earns, any income he earns from any self employment or contracted work, any temporary total benefits he receives pursuant to any worker's compensation award or agreement, any pension he receives from the State of Connecticut or any other source, any disability payments he receives from any source, and any other income he receives. That report shall be made within fourteen days of the receipt of the income.
13. The husband shall be responsible for all the debts on his April 21, 2002 financial affidavit except the debt to the former condo tenants, which shall be shared equally between the parties. The wife shall be responsible for all the debts on her financial affidavit except the debt to the former condo tenants, which shall be shared equally between the parties.
14. The wife shall receive the proceeds from the condominium sale, and shall be solely responsible for any capital gains taxes on the sale. She shall hold the husband harmless and indemnify him on account of those taxes.
15. The wife shall retain, for the benefit of the child, any educational trust funds she has for the child, whether or not disclosed on her financial affidavit.
16. The wife shall remove her name from the Hamden Municipal Credit Union account.
17. The wife shall copy at the husband's expense any photograph he wishes to have from among the existing photographs. She shall have her grandmother's wedding china, all antiques owned by her, all collectables including those collected for the child, except the husband's fishing collectables, and one half of the Christmas ornaments. The husband shall have his tools, computers, cameras, laser material, and the hot tub. He shall remove these articles from the marital premises in a reasonable time.
18. Judgment shall enter in favor of the wife and John Edwards on all counts of the third party complaint dated August 13, 2001.
Judgment shall enter accordingly.
BY THE COURT,
GRUENDEL, J. CT Page 7112